HERGET, Judge.
Southern Oyster Shell Milling Corporation instituted this action to enjoin defendant, Transcontinental Gas Pipe Line Corporation, from maintaining and operating a pipeline through or near shell deposits in Four League Bay in Terrebonne Parish except in such a manner as to enable Plaintiff to remove the shell deposits without interference. Plaintiff further prayed that Defendant be enjoined from locating its pipeline at such a depth same would in any way prevent Plaintiff’s dredges and other vessels from navigating safely over the line.
From a judgment of the Trial Court dismissing its suit, Plaintiff prosecutes this appeal.
*543 The record reveals Plaintiff owned a recorded lease for the procuration and removal of shell granted by the Department of Wildlife and Fisheries of the State of Louisiana of date May 26, 1959. The lease provides the Plaintiff shall have exclusive right to take and remove shell deposits from an area embracing the coastal waters of the Parishes of Iberia, St. Mary and Terrebonne in which is included the disputed area, Four League Bay. The record reflects Plaintiff had previously been assigned an unrecorded shell grant dated November 16, 1951; however, this grant was canceled and declared to be of no force and effect by the interested parties prior to the contract of lease with which we are concerned.
In March 1959 Defendant constructed its pipeline across Four League Bay as part of an interstate system of pipelines to transport natural gas. The construction of this pipeline was not made surreptitiously or in the nighttime but openly and obviously. The pipeline was constructed by authority of a right-of-way grant by the State of Louisiana. The permit therefor had been obtained from the Secretary of the Army, and likewise bore the consent of the local Police Jury and the Department of Public Works. We note that prior to construction in navigable waters of obstructions, consent to such construction must be obtained from the Secretary of the Army. 33 U.S.C. § 403. In compliance with such requirement, on August 21, 1958, permission for such construction was requested by Transcontinental Gas Pipe Line Corporation and pursuant to such request, the Secretary of the Army, through the Corps of Engineers, granted Defendant such permit. In accordance with the practice of the approving authorities, so as to permit timely objection to be made to consideration of such applications, the notice of such application was forwarded to Bay Towing and Dredging Company, Incorporated, a wholly owned subsidiary of Plaintiff, which conducted its shell dredging and removal operations. No timely objection was made to the submitted application.
Plaintiff’s plea for injunctive relief is twofold — it prays Defendant be enjoined from maintaining the pipeline in order that Plaintiff may dredge safely in the vicinity as well as navigate safely across the line. The record does not reveal there is any obstruction to commercial navigation because of the laying of the line; however, same may obstruct, somewhat, Plaintiff’s dredging in the vicinity thereof.
Plaintiff further contends the line was not laid in accordance with the plans approved by the Corps of Engineers, nor in accordance with the permit of the local Police Jury. Both the Corps of Engineers and the Police Jury specified the pipeline be laid, providing for three feet of cover and requiring further that “there shall be no unreasonable interference with navigation.” Plaintiff concedes the pipeline, in actuality, is laid at an average depth of 10 to 11 feet below the surface of mean water, but contends it is not laid beneath the firm bottom of the bay, but generally on the bottom protruding into the soft, navigable muds and liquid silts. Plaintiff argues the shell reefs lie on the bottom atop firm silts and clays, but maintains the liquid silts and muds could not be regarded as a bottom for navigation purposes because it has been established that these liquid silts and clays are constantly being used by mariners as part of the navigable medium of Four League Bay.
Counsel for Defendant answers Plaintiff’s argument concisely and correctly:
“The permit issued by the Secretary of the Army has no reference' to the bed or bottom of Four League Bay, nor does it refer to cover. It sets forth that the construction of the pipe line in accordance with the plans attached to the permit is approved. Exhibit P-11. So, one only needs to examine these plans in order to determine the minimum depth to which the line was to be laid.
*544 “Exhibit D-3 is an enlargement of the plans attached to the permit issued by the Secretary of the Army insofar as it relates to Four League Bay. An examination of this exhibit shows clearly that the pipe line is to be at least 6 feet below the bottom of Four League Bay as we construe it and a minimum of 6 feet below the clear water of the Bay according to Southern Oyster’s definition. We say this because Profile 10 shows water of a depth of from 4 to 5 feet in most instances and the top of the pipe line to be 6.0' minimum below the bottom of the Bay or the bottom of the clear water.
“Likewise, the requirements of the Police Jury were fully met since they provide 'any pipe line * * * (shall) be laid under the following specifications when water is level * * * 0.0' to 6' with 6' cover, 6' to 10' with 4' cover * * * Exhibit D-2.
“ * * * if, for the sake of argument, it is conceded that the bottom, or bed, of Four League Bay is a formation which contained the Atchafa-laya River more than 150 years ago, and, thus, the silts and muds and clays and shells and other material above that old river bed are not a part of the bottom, Transcontinental is not in violation of its permit from the Secretary of the Army or the ordinance of the Police Jury.”
An injunction will not lie to restrain or abate the subsequent maintenance and operation of a lawful structure in navigable waters as a nuisance or as an obstruction to navigation, provided said line is laid and being operated in accordance with the plans approved by the Corps of Engineers. If the pipeline was laid according to the approval of the Corps of Engineers as the permission in this case shows, and such permission has no concept of having been arbitrarily issued, the Court is without authority to inquire into the propriety of the granting of such order.
In our opinion the pipeline was laid in accordance with the plans specified by the Corps of Engineers, who, by Congress, were delegated the right to grant such permission. Accordingly, this Court has no authority to substitute its opinion for the discretion vested in the Corps of Engineers unless same can be categorized as arbitrary, which is in no way contended here.
We further observe this Court is without authority to consider. Plaintiff’s plea for injunctive relief inasmuch as prior to the recordation of Plaintiff’s lease the pipeline here involved had been constructed; in consequence of which Plaintiff is without right to raise the issues here submitted.
For these reasons the judgment of the Trial Court is affirmed.
Rehearing denied; LANDRY and REID, . JJ., dissent from refusal to grant a rehearing.